UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | Cr. No. 04 CR. 114 (RBW) |
| | : | **UNDER SEAL** |
| V. | : | |
| HERNAN GIRLADO-SERNA | : | |
| Defendant. | : | |

**DEFENDANT'S OPPOSITION TO MOTION TO
INTERVENE UNDER CRIME VICTIMS RIGHTS ACT**

**INTRODUCTION**

Defendant Hernan Girlado-Serna submits this memorandum in opposition to the effort by the family of Julio Enriquez to participate in this criminal proceeding pursuant to the provisions of the Crime Victim's Rights Act, 18 United States Code Section 3771 (hereinafter "CVRA"). As set forth herein, the defendant pled guilty in this case because his Colombian auto-self defense group imposed taxes upon the production and/or transportation of cocaine through its zone of influence. The putative interveners claim that Enriquez was killed because he publicly opposed the "cultivation" of cocoa in this region.

Even assuming *arguendo*, the accuracy of the allegations made on behalf of the Enriquez family, the motion to intervene must be denied. By its express language, the CVRA grants status as a "victim" only to persons (or their lawful representatives) who were "directly and proximately" harmed by an act taken in furtherance of an "**element of the offense of conviction**." See, e.g., United States v. Sharp, 463 F.Supp.2d 556, 563-54 (E.D. Va. 2006)(emphasis added). No required element of the offense to which the defendant pled guilty involves the use the violence. There are no allegations in the Superseding Indictment or the

1

Statement of Facts in this case related to the use of violence as either a manner and means or object of the alleged conspiracy. Thus, the interveners cannot establish the specific connection mandated by the CVRA between the elements of the crime charged in this case and the homicide. Although the family members lack standing to intervene in these judicial proceedings, undersigned counsel has been advised that the Enriquez family is participating in Colombia's Justice and Peace program and thus have an alternative forum in which to pursue a remedy.

## FACTUAL BACKGROUND

Hernan Giraldo-Serna is a sixty-six year old Colombian national. He was indicted in a Second Superseding Indictment in this case on March 2, 2005 and extradited to the United States in May of 2008. The defendant ultimately entered a plea of guilty to a charge of conspiracy to manufacture and distribute five kilograms or more of cocaine, knowing or intending that it would be unlawfully imported into the United States. The plea agreement in this case was accompanied by a lengthy Statement of Facts, which set forth a summary of the Government's evidence. The prosecution alleged – and defendant admitted - that he was a leader in the *Bloque Tayrona* of the *Autodefenses Unidas de Colombia* and in that role was involved in the imposition of taxes on those who produced cocaine in clandestine laboratories and/or transported cocaine through their area of control. In return for the taxes, the defendant ensured that the drug traffickers were protected from other paramilitary groups, criminal bands, or Colombian law enforcement.

There are no allegations in either the Superseding Indictment or the Statement of Facts in this case to suggest that violence was a manner or means of the conspiracy in general. Likewise, there are no specific overt acts of violence alleged in the Superseding Indictment and none included in the Statement of Facts.

The interveners claim that they have standing as "victims" in this case because Julio Enriquez, a former guerilla rebel "publicly opposed cocoa cultivation on Colombia's north coast." They allege that as the result of this opposition, the defendant ordered his subordinates to kidnap and then kill Enriquez on or about February 4, 2001. Even if these facts were true, however, they do not establish that the homicide was the "direct and proximate" harm of the international drug trafficking conspiracy charged in this case.

## LEGAL ANALYSIS

**1. The Scope of "Crime Victim" Is Limited By The Offense of Conviction**

The Crime Victim's Rights Act provides certain specifically enumerated rights to those deemed a "crime victim." These include the right to be "reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S. Code Section 3771(a)(4). The CVRA itself specifically defines a crime victim as a person (or his legal representative) who was "directly and proximately harmed as the result of the commission of a Federal offense. . . ."

In trying to determine the contours of direct and proximate harm, the federal courts have looked to the language of two other victims' rights statutes: (1) the Victim and Witness Protection Act of 1982 ("VWPA"), 18 United States Code Section 3663; and (2) the Mandatory Victims Restitution Act of 1986 ("MVRA"), 18 United States Code Section 3663A. Both of these statues provide for relief for a crime victim, who is defined as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

The principal difference between the language of the CVRA which governs in this case and the other statutory provisions is the final dependent clause, which expands the definition of

victim to include a person "directly harmed" by a defendant's criminal conduct in a scheme or conspiracy. At least one court has concluded that the CVRA definition was specifically designed to be more limited. See United States Turner, 367 F.Supp. 2d 319, 326-27 (E.D.N.Y. 2005). [1] Even if the definition of victim in the CVRA is co-extensive with those contained in the other statutes, the Enriquez family still falls outside of the scope of the victim's rights statute.

In order to determine the parameters of a "crime victim" under the CVRA, the federal courts have almost universally relied upon an examination of the elements of the offense of conviction. Thus, in United States v. Sharp, 463 F.Supp.2d 563 (E.D. Va. 2006), the defendant entered a plea of guilty to a conspiracy to distribute marijuana. The plea agreement entered into between the parties set forth certain details about quantity and dates of drug purchases within the time frame of the conspiracy. Prior to sentencing, a former girlfriend of one of defendant's customers attempted to intervene pursuant to the CVRA, claiming that she had been the victim of domestic abuse, which resulted in part from her ex-boyfriend's marijuana use. The district court reviewed the specific language of the CVRA as well as the interpretation of the other victims' rights statutes. It concluded that the "direct and proximate" language in the statutes limited the scope of victims to those whose harm resulted from "an element of the offense of conviction." 463 F.Supp.2d at 563. The court analyzed the elements of conspiracy to distribute marijuana and found that it "did not include assault and battery, or any other violent conduct." Id. at 564. Accordingly, the court concluded that the alleged assault and the underlying offense were too

---

[1] The original version of the Victim and Witness Protection Act of 1982 ("VWPA") authorized the court to impose an award of restitution to "any victim" of certain enumerated offenses. In Hughey v. United States, 495 U.S. 411, 412-13 (1995), the Supreme Court held that this language limited restitution to the "loss caused by the specific conduct that is the basis of the offense of conviction." Thus, it held that the statute did not provide authority to award restitution to victims of, *inter alia*, other uncharged crimes. After the decision in Hughey, Congress modified the definition of victim in the VWPA to the version included above. If the scope of victim in the CRVA is equivalent to the original interpretation of the language in the VWPA then the interveners motion must be summarily denied because the defendant was not charged with a homicide in this case.

4

attenuated and that the putative intervener's injuries were not the direct and proximate result of the offense of conviction.

Similarly, in United States v. Atlantic States Cast Iron Pipe Company, 612 F.Supp. 2d 453 (D.N.J. 2009), the defendant corporation and several of its employees were convicted at trial of conspiracy to violate the federal Clean Air and Clean Water Acts and to obstruct an investigation by the Occupational Safety and Health Administration ("OSHA") into several incidents in which employees of the company sustained serious and/or fatal injuries in the workplace. Prior to sentencing, six employees sought to participate in the case under the CVRA, claiming that they were victims of the underlying criminal offenses. The district court conducted an extensive survey of the definition of "victim" under the CVRA and other related statutes, along with a survey of cases from numerous federal circuits. Even though the defendants were convicted of a conspiracy to obstruct justice in relation to workplace injuries, the court concluded that the victims of the injuries did not have status under the CVRA. In its analysis of this issue, the court specifically focused on the elements and objects of the offenses for which the defendants were convicted:

> This Court finds that the harm to the six named workers alleged by the government to have been "directly and proximately" caused by the offenses of conviction is too factually attenuated, in relation to the offenses of conviction, for the Court to make a finding of CVRA or VWPA statutory crime victim status in this case. The conduct that allegedly harmed one or more of the six named workers may have been in violation of OSHA workplace standards (standards applicable to the employer only), and that appears to be the actual basis of the government's argument in this motion. [citations omitted]. **Such conduct, however, was not conduct proscribed by the obstruction and false statement substantive offenses and conspiracy objectives** of which each of these defendants was convicted, and we perceive no "direct and proximate" causal link between those offenses of conviction and the injuries sustained by the six named workers.

612 F.Supp.2d at 545.

In its decision in In Re McNulty, 597 F.3d 344 (6th Cir. 2010), the Sixth Circuit likewise

concluded that the former employee of an company convicted of a Sherman Act anti-trust violation was not a crime victim of the unlawful criminal conspiracy when he alleged that he was fired by the company because of his refusal to participate in the conspiracy. In determining the parameters of crime victim under the CVRA, the court again conducted an analysis based upon the elements of the offense, determining that it must:

> (1) look to the **offense of conviction**, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were "directly and proximately harmed as a result of the commission of [that] Federal offense."

597 F.3d at 351 (emphasis added). The court concluded that the firing were not acts "inherent" in the criminal conspiracy and denied the motion to intervene. Id. at 352.

Finally, in In Re Galvis Rendon, 564 F.3d 170 (2d Cir. 2009) the Second Circuit affirmed the denial of the efforts of the family of another alleged Colombian homicide victim to obtain status as a crime victim under the CRVA under exceptionally similar facts as presented here. In that case – which was brought by the same attorneys who represent the putative interveners in this case – Juan Vargas-Rendon was murdered by paramilitaries associated with the Auto-Self Defense group led by Colombian drug trafficker Diego Fernando Murillo-Bejarano (known as "Don Berna"). Murillo-Bejarano accepted responsibility for the murder under Colombian law for the murder and was subsequently extradited to the United States where he pled guilty to a charge of conspiracy to unlawfully import more than five kilograms of cocaine into the United States. The Court of Appeals noted that neither the Indictment against him or the Plea Agreement to which he entered made "reference to his engaging in any violent conduct." 564 F.3d at 172.

The district court dismissed the petition to intervene, finding that the murder was not the direct and proximate result of the crime for which the defendant pled guilty. Id. at 175. The Court of Appeals affirmed, concluded that while Murillo-Bejarano was responsible in some way

6

for the homicide, there was simply "insufficient evidence of nexus" between the conspiracy to import cocaine and the homicide to establish status under the CVRA – even though he accepted responsibility for the murder in the Colombian judicial system. Id.

As set forth in the following section, even assuming the truth of the allegations made by the putative interveners, there is also an insufficient factual relationship between the charges against defendant Hernan Giraldo-Serna and the Enriquez murder to grant them status under the Crime Victims Act.

## 2. The Elements Of The Offense of International Drug Trafficking Do Not Include Homicide

Based upon the foregoing, this Court must undertake an analysis of the elements of the conviction in this case as the first step in determining the potential scope of alleged "victims" of the crime. In this case, the defendant pled guilty to one count of Conspiracy to Manufacture and Distribute Five Kilograms Or More Of Cocaine, Knowing Or Intending That It Would Be Unlawfully Imported Into The United States, in violation of 21 United States Code Sections 963, 959, 960. The essential elements of this offense require proof that the defendant: (1) joined a criminal conspiracy to manufacture or distribute more than five kilograms of cocaine; (2) with the intent or knowledge that the drugs would be illegally imported into the United States. See, e.g., United States v. Borda, 786 F.Supp.2d 25, 32-33 (D.D.C. 2011).

Several critical facts are not – and cannot – be in dispute. The criminal statute at issue in this case does not require as an essential element the use of force or violence in furtherance of drug trafficking. Moreover, the Superseding Indictment in this case does not include any specific allegations of the use of violence as a manner or means of the conspiracy. Finally, the written Statement of Facts entered into by the defendant in this case does not include any allegations of violence in furtherance of the drug conspiracy. Under the analysis set out by the

7

courts in the *Sharp*, *Atlantic States*, *McNulty* and *In Re Galvis* decisions discussed above the inquiry as to the interveners status is straightforward: was the harm occasioned by the putative interveners the result of an element of the charged offense. The answer to that inquiry is an emphatic: no, it was not. Thus, the motion to intervene should be denied.

The interveners have argued, however, that the definition of "crime victim" is not based solely upon the elements of the offense and that they should be permitted to participate in this case because Henriquez homicide was "foreseeable" and "committed in furtherance of the defendant's drug conspiracy." Movants Memorandum of Law. at p. 23. The interveners rely upon the decision of the Eleventh Circuit in In Re Stewart, 552 F.3d 1285 (11th Cir. 2008) in an effort to convert the "direct and proximate" requirement of the CVRA into an open ended test of mere "foreseeability" to define who is a victim of crime. In Stewart, the Court of Appeals held that the standard for determining who is a crime victim involves a two step analysis: (1) a court must identify the "behavior" that constitutes the commission of the offense; and (2) identify the direct and proximate effect of that behavior." 552 F.3d at 1288. Accord United States v. Rogers, 2010 WL 1872855 (N.D. Ga.). Despite the interveners claim, the Stewart decision did not establish foreseeability as the test for status as a victim. The nexus must still be direct and proximate based upon the conduct underlying the criminal offense.

The criminal offense charged in this case is international drug trafficking with the intention to illegally import narcotics into the United States. Although the interveners note that "the potential for violent conduct in drug conspiracies is well known," such generalities do not aid in the analysis of whether violence is included in the conspiracy charged in this case. See Movants Memo at p. 24. As noted, the factual predicate for the defendant's guilty plea was limited to the imposition of taxes on the production of cocaine in clandestine laboratories in the

8

*Bloque Tayrona* and/or the transportation of cocaine through the zone. Although the Henriquez family claims that he was murdered because he opposed the cultivation of cocaine, the charges against the defendant and the underlying facts have nothing to do with cocaine cultivation. The interveners note that the Government's motion for pretrial detention in this case argued that the *Bloque Tayrona* supposedly required local farmers growing cocaine in the region to sell it only to their group upon pain of death. See Movants Memo at p. 24. From these allegations they hypothesize that Henriquez's opposition to cocaine cultivation made his murder foreseeable because it "jeopardized the Defendant's control over the cocoa-growing in the area." Memo at p. 25. In the defendant's view, rather than supporting the motion to intervene, this convoluted argument exemplifies the lack of a proximate and direct relationship between the charges in this case and the homicide.

In United States v. Sellers, 512 Fed. Appx. 319 (4th Cir. 2013), the Court of Appeals held that the murder by a drug trafficker of someone who tried to rob his residence and steal cocaine was not relevant conduct for purposes of sentencing. The Court noted that the victim was not a member of the drug conspiracy, and had not either sold or purchased drugs from the conspirators. The Court ultimately concluded - in language that seems particularly appropriate here – that "even if the murder happened to be drug-related in some sense, nothing connects the [] murder to the particular drug conspiracy in this case." 512 Fed. Appx. at p.10.

In the same way, even assuming *arguendo* the accuracy of the allegations made by the interveners concerning the Enriquez murder the murder was not the proximate and direct result of the crime charged in this case – or the conduct underlying that offense – and interveners are therefore not "crime victims" within the meaning of the CVRA.

9

## CONCLUSION

For all of the foregoing reasons, defendant Hernan Giraldo-Serna respectfully asks that the motion to intervene be denied

                Respectfully submitted

                *Robert Feitel*

                _____
                Robert Feitel, Esquire
                Law Office of Robert Feitel
                1712 N Street, N.W.
                Washington, D.C.  20009
                D.C. Bar No. 366673
                202-450-6133 (office)
                202-255-6637 (cellular)
                RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was sent, via email to Department of Justice Trial Attorney Paul Laymon at the Narcotic and Dangerous Drug Section, this 2nd day of February, 2015.

*Robert Feitel*

_____
Robert Feitel