## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|         Plaintiff | )    CASE NO.:  1:04-cr-00114-1 RBW |
|   v. | ) |
| | ) |
| GIRALDO-SERNA | )    UNDER SEAL |
| | ) |
|         Defendant | ) |
| | ) |
| Zulma Natazha Chacín de Henríquez, Nadiezhda | ) |
| Natazha Henríquez Chacín, and Bela Henríquez | ) |
| Chacín: | ) |
| | ) |
|         Movants. | ) |
| | ) |
| | ) |

## MOVANTS' CVRA SUBMISSION IN CONNECTION WITH STATUS CONFERENCE SCHEDULED FOR FEBRUARY 18, 2015 AT 10:30 AM

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.   THE MOVANTS ARE ENTITLED TO BE RECOGNIZED AS VICTIMS AND
     AFFORDED THEIR STATUTORY RIGHTS ................................................... 2

     A.   The 2010 Motion Should be Granted .................................................... 2

     B.   Additional Analysis Confirms that Movants are Victims under the CVRA ........... 2

          1.   The Government's Elements-Only Focus is Mistaken ............................. 3

          2.   In Opposing Movant's Victim Status, the Government
               Mischaracterizes How the Conspiracy was Committed ......................... 5

II.  FUTURE PROCEEDINGS SHOULD BE OPEN TO THE PUBLIC, OR AT
     LEAST THE MOVANTS; AND THE RECORD OF PRIOR PROCEEDINGS
     SHOULD BE MADE AVAILABLE TO THE PUBLIC, OR AT LEAST THE
     MOVANTS. ............................................................................................... 6

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABC, Inc. v. Stewart*, 360 F.3d 90 (2d Cir. 2004) .............................................................7

*Application of Washington Post Co.*, 576 F. Supp. 76 (D.D.C. 1983) .............................7

*Doe No. 1 v. United States*, 749 F.3d 999 (11th Cir. 2014) ............................................9

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) ..........................6

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) .....................................7

*In re Simons*, 567 F.3d 800 (6th Cir. 2009) ...................................................................8

*In re Stewart*, 552 F.3d 1285 (11th Cir. 2008) ..............................................................3

*Johnson v. Greater Southeast Cmty. Hosp. Corp.*, 951 F.2d 1268 (D.C. Cir. 1991) .....................6

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ....................................7, 8

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ......................................6

*Taylor v. United States*, 495 U.S. 575 (1990) ...............................................................4

*United States v. Washington*, 434 F.3d 1265 (11th Cir. 2006) .....................................3

## STATUTES

18 U.S.C. § 924(e) ..........................................................................................................4

18 U.S.C. § 1111 .............................................................................................................5

18 U.S.C. § 3553(e) ........................................................................................................8

18 U.S.C. § 3663A(a)(2) .................................................................................................3

18 U.S.C. § 3771(a) ...................................................................................................1, 8, 9

18 U.S.C. § 3771(c) .....................................................................................................3, 4

18 U.S.C. § 3771(d) ........................................................................................................1

## RULES

Fed. R. Crim. P. 11(b)(1) ...............................................................................................8

Fed. R. Crim. P. 11(c)(2) ...............................................................................................8

**MISCELLANEOUS**

UNITED STATES SENTENCING GUIDELINES § 2A1.1 ........................................................................5

UNITED STATES SENTENCING GUIDELINES § 2A1.2 ........................................................................5

UNITED STATES SENTENCING GUIDELINES § 2D1.1 ........................................................................5

UNITED STATES SENTENCING GUIDELINES § 5K1.1 ........................................................................8

**INTRODUCTION**

Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín and Bela Henríquez Chacín (collectively the "Movants") are the surviving relatives (wife and children) of Julio Eustacio Henríquez Santamaría ("Mr. Henríquez"). Mr. Henríquez was murdered by Hernan Giraldo-Serna (the "Defendant") because Mr. Henríquez was thwarting the object of the drug trafficking conspiracy for which Defendant was indicted, extradited, and is before this Court. The Movants are, therefore, not only victims of the Defendant, they are victims of the crime for which he is soon to be sentenced in this Court.

Movants have been informed by the Department of Justice that the Court has allowed this submission and their participation at a February 18 status conference. *See* Exhibit 1 to the Declaration of Roxanna M. Altholz, filed concurrently herewith ("Altholz Decl."). Movants have two requests:

*First*, that the motion they filed in 2010 be granted so they are recognized as victims under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, with rights that include, among others, "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . plea [or] sentencing . . . ," the "right to confer with the attorney for the Government in the case," the right to restitution as provided in law, and the right to be treated with fairness. 18 U.S.C. § 3771(a)(4), (5), (6) & (8). A person asserting the rights of a victim also has the right to seek those rights by a motion to the district court and to have "[t]he district court . . . take up and decide any motion asserting a victim's right forthwith." 18 U.S.C. § 3771(d)(3).

*Second*, that all future proceedings in this matter be public, or at least open to the Movants; that the record of prior proceedings (including, especially, but not exclusively, any plea agreement or Rule 11 colloquy, or trial transcript) be made available to the public, or at least the Movants; and that there be no further proceedings relating to the determination of the Defendant's guilt, sentence, or detention without notice to the Movants and a prior determination of their right to be heard at such proceedings.

## ARGUMENT

### I.  THE MOVANTS ARE ENTITLED TO BE RECOGNIZED AS VICTIMS AND AFFORDED THEIR STATUTORY RIGHTS.

#### A.  The 2010 Motion Should be Granted

The Movants last communicated with the Court on August 5, 2010 in the Movants'
Opposition Memorandum in Support of Motion to Enforce Rights Under the Crime Victims'
Rights Act ("Movants' Opp.") and the Declaration of Joshua A. Holzer in Support of
Opposition Memorandum in Support of Motion to Enforce Rights Under the Crime Victims'
Rights Act with evidence ("Holzer Opp. Decl."). Those filings are respectfully incorporated
herein by this reference. Likewise incorporated herein by this reference are the Movants'
Motion to Enforce Rights Under the Crime Victim's Rights Act ("Movants' Mem.") and the
Declaration of Joshua A. Holzer in Support of Motion to Enforce Rights Under the Crime
Victims' Rights Act with evidence, filed April 19, 2010. The Movants are unaware of the
resolution, if any, of the prior motion. The United States Court of Appeals for the District of
Columbia Circuit directed that the Movants be notified promptly of its disposition. *See* Order,
*In re Zulma Natazha Chacin de Henríquez*, No. 10-3051 (D.C. Cir. June 11, 2010). Movants
request that their motion briefed in 2010 be granted and will not reiterate all of the argument,
evidence and authorities contained therein. They respectfully submit the following additional
argument.

#### B.  Additional Analysis Confirms that Movants are Victims under the CVRA

The Government argued that in determining who is a victim, the Court should look to
the "conduct underlying an element of the offense." *See* Response of the United States to
Order to Show Cause in Connection with Motion to Enforce Rights Under the Crime Victims'
Rights Act, *United States v. Giraldo-Serna, et al.*, No. 1:04-cr-00114-1 RBW, ECF No. 200
(D.D.C. June 18, 2010) ("Govt.'s Response") at 10. The Government acknowledges that an
element of the Defendant's charged offense is "an agreement . . . *the object of which is to
manufacture* and distribute . . . *cocaine* . . . ." *Id.* at 9 (emphasis added). Instead of conceding

that the Court must therefore consider conduct furthering the object of the conspiracy, the Government veers off and asserts that "[t]he conduct underlying these elements does not include any acts of violence or force." *Id.* To the extent the government is suggesting that the Movants' harm must be caused by an element of the crime, the government is mistaken as to the law. To the extent the government is attempting to characterize the conduct of the charged conspiracy, it is demonstrably wrong and at odds with its prior position.

### 1.    The Government's Elements-Only Focus is Mistaken

While the use of violence or force is not itself an element of the conspiracy offense here, that is immaterial to the analysis of whether Movants are victims of the conspiracy. Just such an argument has been repeatedly rejected in connection with the nearly identical definition of "victim" in the MVRA.

> [Defendant] argues that recovery under the Restitution Act is limited to victims who are harmed by the offense itself, and he contends that the Police Department and the Condominium Association were harmed as a result of his later flight, not his offense of bank robbery. Because fleeing is not *an element* of bank robbery . . . [defendant] argues that the victims of his flight are not entitled to restitution under the Act. We disagree. [Defendant's] argument is contrary to the plain language of the Restitution Act, which covers harm that "directly and proximately" results from the commission of the offense. *See* 18 U.S.C. § 3663A(a)(2). *Although flight is not an element of bank robbery, its harm may directly and proximately result from the robbery.* Two of our sister circuits have addressed this issue and have reached the same conclusion.

*United States v. Washington*, 434 F.3d 1265, 1268 (11th Cir. 2006) (citations omitted; emphasis added). The "elements only" approach advocated by the Government finds no basis in CVRA case law. *See, e.g.*, *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008) ("This argument implicitly and mistakenly assumes that any CVRA victim must be mentioned in the indictment or information. Put differently, it assumes that the identity of any CVRA victim must be an element of the offense itself. The CVRA, however, does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document.").

The central question before this Court is whether Mr. Henríquez is "a person directly and proximately harmed as a result of *the commission of*" the conspiracy. 18 U.S.C. § 3771(c)

3

(defining "crime victim"; emphasis added).  By its plain language the CVRA requires considering the commission of the offense.  Although killing Mr. Henríquez (who stood in the way of the conspiracy's object) is not an element of the offense, the killing can, and did, directly and proximately result from the commission of the charged conspiracy.  Movants' Opp. at 1, 3-8, 19-23 (marshalling evidence establishing Mr. Henríquez was killed because of his efforts to stop the production of coca).  Consequently, the wife and children of Mr. Henríquez are victims here.

The approach the Government urges is akin to the "categorical approach" used to classify prior convictions to determine their enhancing effect under various statutory schemes. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) (using categorical approach in determining whether prior conviction was a violent felony under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)).  That antiseptic approach, which requires the Court to ignore a defendant's actual conduct, has no application here.  It was developed based on the language of the ACCA and was intended to avoid the complexities of developing the facts around prior convictions.  495 U.S. at 601-02.  In fact, the *Taylor* Court contrasted language like that in the CVRA to the language in the ACCA in concluding that the categorical approach applied to the latter.  "Section 924(e)(1) refers to 'a person who . . . has three previous convictions' for – *not a person who has committed* – three previous violent felonies or drug offenses."  *Id.* at 600. The CVRA refers to harm resulting from "the commission of" an offense in defining "victim." 18 U.S.C. § 3771(c).  According to *Taylor*, that is a mandate to examine how the conspiracy was committed, not just its elements.

While the efficiency of the categorical approach may make sense in assessing old prior convictions, it is not the approach used in proceedings in pending cases in which victims are entitled to participate, such as the determination of guilt, sentencing, and detention.  The CVRA contemplates a role for the victim in all those fact-intensive proceedings in which the Defendant's conduct (not just the elements of his offense) is the focus.  There is no reason the

determination of whether someone is a victim entitled to participate in such proceedings cannot consider the Defendant's actual conduct.

The Sentencing Guidelines will require consideration of the conduct underlying the conspiracy – including the murder of Mr. Henríquez. The Guideline applicable to drug trafficking conspiracies is § 2D1.1. That Guideline expressly requires consideration of Defendant's threat to murder, and murder of, Mr. Henríquez. Guideline § 2D1.1(d)(1) provides that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline." Guideline § 2D1.1(b)(2) provides for a two-level upward adjustment "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence . . . ." The murder of Mr. Henríquez must, therefore, be considered at Defendant's sentencing, and the Movants are entitled to be heard about it.

## 2.    In Opposing Movant's Victim Status, the Government Mischaracterizes How the Conspiracy was Committed

Movants have been denied access to the initial indictment that was superseded, the factual basis for the plea agreement (or other determination of guilt), and other court records that would likely elucidate the facts underlying the conspiracy. However, even the minimal amount of information that was once available to them substantiates the nexus between the killing of Mr. Henríquez and the charged conspiracy and settles the question of whether conduct underlying this conspiracy included acts of violence or force.

In the Government's own motion for pretrial detention of the Defendant, it provided background on the offense. In so doing, the Government described the Defendant's conduct that resulted in Mr. Henríquez's murder. The Government explained that the Defendant "require[d] local farmers growing coca in the area, the primary ingredient for cocaine, to sell their coca only to his organization under a penalty of death." Government's Motion for Pretrial

Detention, *United States v. Giraldo-Serna, et al.*, No. 1:04-cr-00114-1 RBW, ECF No. 124 (D.D.C. May 15, 2008) (the "Govt.'s Detention Memo") at 2.

The public record is also replete with information about how the Defendant's drug business worked and the extent to which violence, in particular violence against farmers, was a necessary component. One declassified U.S. government document describes the Defendant as a paramilitary leader who uses "threats, intimidation, murder, and corruption" to maintain control of northern Colombia. *See* Altholz Decl. Ex. 2. Members of the Defendant's paramilitary group have also testified that the Defendant issued orders to kill Mr. Henríquez *because he took a prominent role against coca growing in Santa Marta*. *See generally* Govt.'s Response Ex. 6 at 14, 16, 21, 22-23, 24, 37; Govt.'s Response Ex. 7 at 5, 6, 14; Govt.'s Response Ex. 8 at 1-2, 6; Declaration of Alberto Segundo Manjarres-Charris at 2, 4 (Aug. 22, 2003) (Holzer Opp. Decl. Ex. B); Movants' Opp. at 1, 3-8, 19-23 (and evidence cited therein). Mr. Henríquez's killing started with his abduction from a meeting where he was training farmers as part of his anti-coca efforts. Movants' Opp. at 6 (and evidence cited therein). It defies logic and common sense to contend that even though Mr. Henríquez was killed as a result of his effort to thwart the production of cocaine – the object of the conspiracy – he was not a victim of the conspiracy. He was, and his surviving family members are entitled to the rights afforded victims.

## II. FUTURE PROCEEDINGS SHOULD BE OPEN TO THE PUBLIC, OR AT LEAST THE MOVANTS; AND THE RECORD OF PRIOR PROCEEDINGS SHOULD BE MADE AVAILABLE TO THE PUBLIC, OR AT LEAST THE MOVANTS.

There is a "'strong presumption in favor of public access to judicial proceedings.'" *E.g.*, *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson v. Greater Southeast Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). Exclusion of the public from proceedings in this criminal case is improper without "an overriding interest articulated in findings . . . ." *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 (1980). This interest "is to be articulated along with findings specific

enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). No such findings can be made unless those excluded, like the Movants, have been "given the opportunity to present the grounds for their objection to exclusion." *Application of Washington Post Co.*, 576 F. Supp. 76, 78 (D.D.C. 1983) (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 (1982)).

"Our national experience instructs us that except in rare circumstances openness preserves, indeed, is essential to . . . public confidence in the administration of justice." *ABC, Inc. v. Stewart*, 360 F.3d 90, 105-06 (2d Cir. 2004). For the Movants, the case against Defendant is deeply personal and at the center of their struggle for justice. For the public, both in the United States and abroad, this case has enormous significance and disclosure of court records would serve the on-going efforts in Colombia to address the causes of a fifty-year civil war and end the conflict. The case offers a window into Hernan Giraldo-Serna's reign of terror on Colombia's Atlantic coast and an opportunity to understand the role of narco-traffickers in the conflict. The intense public interest in access in this case only increases the burden to justify secrecy.

In this case, there appears to have been no process before the public was excluded from all proceedings. Even a party to the case, the Government, disavowed any knowledge as to *why* the docket was sealed or even *that* the docket was sealed. *See* Email from Paul Joseph, Trial Attorney, U.S. Department of Justice to Leo Cunningham, May 27, 2010 ("I do not know why, or even if, the docket is sealed.") (Altholz Decl. Ex. 3). If there was any process to make findings before limiting public access to these proceedings, Movants respectfully submit that it was deficient because they, and other interested members of the public, were not given the opportunity to object.

Any limit on access to judicial proceedings must be narrowly tailored to serve the articulated overriding interest. *Globe Newspaper*, 457 U.S. at 606-07. The existence of the case against this Defendant is well known. The Government continues to publicize the

7

indictment and extradition of the Defendant.  *See, e.g.*, Press Release, 14 Members of Colombian Paramilitary Group Extradited to the United States to Face U.S. Drug Charges, U.S. Attorney's Office (S.D. Fla.), dated May 13, 2008 (Holzer Opp. Decl. Ex. 3).  Given that the existence of the case is publicized by the Government, the "undocketing" of the Defendant's entire proceedings would not appear to be the least restrictive alternative available to protect the interest, if any, that would override the presumption in favor of public access.  *See Press-Enterprise*, 464 U.S. at 510.

Nor does the determination of the Defendant's guilt in complete secrecy appear to be narrowly tailored to protect an overriding interest.  Movants have been informed that Defendant's sentencing may be imminent, but they are unable to ascertain how guilt was determined, *i.e.*, by plea or verdict.  They have not had any access to the terms, if any, of any plea agreement.  Guilty pleas are required to occur "in open court," FED. R. CRIM. P. 11(b)(1), and the plea agreement must likewise be disclosed "in open court . . . unless the court for good cause allows the parties to disclose the plea agreement in camera."  FED. R. CRIM. P. 11(c)(2).  An example of a less restrictive alternative to conducting the entire change of plea process in secret might have been to seal only those terms of a plea agreement for which there might be a legitimate interest in secrecy (*e.g.*, terms relating to Defendant's role, if any, in making, or strengthening, criminal cases against others in anticipation of a U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e) sentence reduction – where the existence of such a term has been demonstrated to create a genuine risk to someone's safety that cannot be ameliorated in other ways).

The importance of safeguarding the public's right of access to judicial proceedings is particularly acute where victims' rights are at issue.  The CVRA links a victim's right to be heard at various proceedings to those proceedings being public.  18 U.S.C. § 3771(a)(4).  Undocketing an entire case, or eliminating public access to hearings relating to release, plea, or sentencing, unfairly deprives a victim of the right to be heard.  Consequently, even the failure to rule promptly on a putative victim's motion to unseal court records can itself violate the CVRA.  *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009) ("[T]he failure of the district court to

rule on the motion [to unseal] for a three-month period can be construed as an effective denial of rights under the CVRA.  Although there may not have been any substantive proceedings in the criminal action during this three-month period, the sealing of the record prevented the petitioner from determining whether his rights under the statute were being violated.  A crime victim has the right 'to be treated with fairness and with respect for the victim's dignity.'" (quoting 18 U.S.C. § 3771(a)(8))).

It would be unfair to the Movants, irrespective of any statutory rights, to sentence Defendant on the basis of any plea agreement here because the Movants were given to understand, based on communications from the Court's staff and the Government, that the Movants would be heard in connection with any plea – and at least advised before a plea occurred.  The Court's staff informed the Movants of the following:

> Judge Walton recognizes his obligation to consider your clients' statements at the time of release, plea, sentencing, or at any parole proceeding.  It is his practice to do so after he has provided a copy of the written statement to both the government and the defendant, and the parties have had a chance to file any objections to the Court's consideration of those materials.  Or, in the case of any oral statement that your clients wish to make, Judge Walton will consider your clients' representations at any proceedings when the parties have an opportunity to make oral representations in response.

See Email from Tiffany Stedman, dated November 9, 2009 (Holzer Opp. Decl. Ex. 19).  The Government committed to apprise Movants before there was a plea.

> I can tell you that any issues related to possible plea or sentencing matters in this case will not move forward until we can discuss the matter.

Email from Paul Joseph, dated October 20, 2009 (Altholz Decl. Ex. 4).

If plea proceedings have occurred, or if other proceedings have occurred in which Movants would have had a right to participate had the proceeding been public, Movants may be entitled to relief for their exclusion from such proceedings.  *See Doe No. 1 v. United States*, 749 F.3d 999, 1001-02 (11th Cir. 2014) (allowing discovery where victims who were excluded from plea negotiations sought recission of plea agreement).

**CONCLUSION**

For the foregoing reasons, and based on the entire record in this case, the Movants should be granted their statutory rights as victims, and the right of the Movants, and of other members of the public, to access the proceedings against Defendant should be honored.

Dated:  February 13, 2015

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _Melissa B Mannino_
MELISSA MANNINO
D.C. Bar No. 446154
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1700 K Street, NW
Fifth Floor
Washington, DC 20006-3817
Telephone:  (202) 973-8800
Facsimile:  (202) 973-8899
mmannino@wsgr.com

*Counsel for Movants Zulma Natazha Chacín de
Henríquez, Nadiezhda Natazha Henríquez Chacín
and Bela Henríquez Chacín*

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, a true and correct copy of the foregoing:

1.) **MOVANTS' CVRA SUBMISSION IN CONNECTION WITH STATUS CONFERENCE SCHEDULED FOR FEBRUARY 18, 2015 AT 10:30 AM;**

2.) **DECLARATION OF ROXANNA M. ALTHOLZ IN SUPPORT OF MOVANTS' CVRA SUBMISSION IN CONNECTION WITH STATUS CONFERENCE SCHEDULED FOR FEBRUARY 18, 2015 AT 10:30 AM AND;**

3.) **EXHIBITS 1 – 4 THERETO**

was filed via hand delivery with Clerk's office and served all on counsel of record as indicated below:

Robert Feitel                                 ☐ Via Hand Delivery
FEITEL LAW FIRM                        ☑ Via Electronic Court Notification
1712 N Street, NW                        ☑ Via Overnight Mail
Suite 401                                       rf@rfeitellaw.com
Washington, D.C.  20036

Paul Laymon, Trial Attorney          ☐ Via Hand Delivery
U.S. DEPARTMENT OF JUSTICE   ☑ Via Electronic Court Notification
Narcotic and Dangerous Drug Section  ☑ Via Overnight Mail
1400 New York Avenue, NW           Paul.Laymon@usdoj.gov
Washington, D.C.  20005

Katrina Lake