UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Crim. No. CR-04-114 (RBW) |
| | ) | (UNDER SEAL) |
| HERNAN  GIRALDO-SERNA, | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE  TO CVRA SUBMISSION IN CONNECTION WITH STATUS CONFERENCE

**COMES NOW** the United States of America, by and through the undersigned

attorney, and responds to the movant's Submission In Connection with Status Conference,

submitted on February 13, 2015 pursuant to the Crime Victims' Rights Act (CVRA), Title 18,

United States Code, Section 3771.

## PROCEDURAL HISTORY

Defendant Hernan Giraldo-Serna (hereafter defendant or Giraldo) was indicted in

the District of Columbia on March 2, 2005 with conspiracy to distribute cocaine, knowing and

intending the cocaine would be imported into the United States.  On May 13, 2008, the defendant

was extradited to the United States.  Defendant pleaded guilty on January 29, 2009.

The movants first sought relief from the District Court under the CVRA on April

19, 2010.  Before the government responded to this motion and before the District Court ruled on

the movants' request for relief under the CVRA, the movants on June 8, 2010 petitioned the

United States Court of Appeals for the District of Columbia Circuit for a writ of mandamus.  The

government responded on June 10, 2010 to the mandamus petition, arguing that the writ should be denied, and on June 11, 2010, the Court of Appeals denied the movants' mandamus petition. Thereafter, on June 18, 2010, the government responded to the movants' request for relief under CVRA, and the government relies on and incorporates herein its response from June 18, 2010.

On February 13, 2015, the movants re-asserted their 2010 motion to be recognized as victims under the CVRA. The movants claim that status under the CVRA because (1) they assert they are the surviving relatives of Julio Henriquez Santamaria (hereafter, Mr. Henriquez) and (2) they assert Mr. Henriquez was murdered by the defendant because Mr. Henriquez was thwarting the object of the drug trafficking conspiracy for which defendant is before the court. Second, the movants ask for certain other relief concerning the public nature of court proceedings, including that all future proceedings be public or at least open to the movants, that all prior proceedings be made available to the public, and that the movants receive notice of any future proceeding and the guarantee to be heard at such proceeding.

## I. MOVANTS ARE NOT "CRIME VICTIMS" AS DEFINED IN THE CVRA

The United States continues to maintain that the movants are not "crime victims" pursuant to the CVRA. Simply put, the movants do not qualify for the rights and privileges set out in the CVRA because Mr. Henriquez was not a "person directly and proximately harmed as a result of the commission of a Federal offense." *See* CVRA, 18 U.S.C. Section 3771(e). More specifically, the movants cannot show by a preponderance of the evidence that Mr. Henriquez was killed directly and proximately as the result of the defendant's involvement in a conspiracy to distribute cocaine, knowing and intending the cocaine would be imported into the United States. *See* United States v. Atl. States Cast Iron Pipe Co., 612 F. Supp. 2d 453, 524 (D.N.J. 2009)

("determinations of statutory crime victim status, like factual findings under the guidelines, are to be made by the district court under a preponderance of the evidence standard.")

## A. The standard to be used by the District Court in assessing whether the movants satisfied the CVRA

In its 2010 filing, the government set forth the correct two- step inquiry: first, define the scope of the defendant's criminal conduct, that is, what federal offense did the defendant commit (and courts certainly did and currently do use the elements of the offense charged in making a factual inquiry to delineate that scope under the CVRA, notwithstanding the movants' claims to the contrary), and second, determine if that conduct caused the harm (the requisite causation element). *In re McNulty,* 597 F.3d 344, 350-51 (6th Cir. 2010); *In re Rendon Galvis,* 564 F.3d 170, 175-76 (2nd Cir. 2009); *United States v. Sharp,* 463 F.Supp. 2d 556, 563 (E.D. Va. 2006).

In determining the scope of the conduct from which the harm to the victim must arise, courts have generally limited their inquiry to "conduct underlying an element of the offense." *Sharp,* 463 F.Supp. 2d at 563; *see also In re Stewart,* 552 F.3d 1285, 1288-89 (11th Cir. 2008). This interpretation is consistent with the language of the CVRA itself, as the statute requires that a victim be harmed as the result of the commission of "a Federal offense." CVRA, Section (e). In their February 13, 2015 submission, the movants claim that the government's reliance on the elements of the offense to assess the scope of the defendant's criminal conduct is not supported by the CVRA case law. However, the movants cite no law for their claim and fail to suggest how the District Court should determine the scope of the defendant's criminal misconduct which constitutes "the commission of a Federal offense."

It is telling that, at page three of the movants' submission, when claiming that courts have rejected using the elements of the offense as a guide, movants cite no authority for their claim other than a reference to *In re Stewart*, 552 F. 3d at 1289. However, *Stewart* does not reject looking to the elements of the offense to determine the scope of the defendant's criminal conduct. Further, while the language cited by the movants from *Stewart* is correct, and *Stewart* emphasizes that the court should look to the harm suffered as a result of the commission of the offense (and not whether the victims are included in the indictment), *Stewart* provides no support for the movant's position. *Stewart* involved a bank executive as a defendant, and the offense was an honest services fraud conspiracy and money laundering involving charging mortgage borrowers a larger fee than the agreed upon mortgage brokerage fee. The movants in *Stewart* who were declared victims were the mortgage borrowers, and the court held that the movants were victims of the conspiracy to deprive the bank of honest service, given that the movants and the bank had an agreement to pay a certain amount but as a result of the mortgage brokerage fee, the movants were obligated to pay a larger amount – thus "suffering direct and proximate harm." The instant case is far more attenuated than the offense in *Stewart*.

The movants go on to argue at page four of their submission that the government's reliance on the elements of the offense as a guide to determining the scope of the defendant's conduct is akin to classifying convictions under the Armed Career Criminal Act. This misplaced argument is apparently inserted into the movant's argument to show that the government is asking the District Court to "ignore a defendant's actual conduct." To the contrary, the government is urging the court to consider the defendant's actual conduct, as well as the elements of the offense, in determining precisely from what "Federal offense" any alleged victim's harm arose.

In *In re McNulty,* 597 F.3d at 351, the Court reviewed other CVRA cases and came up with its methodology to determine victim status (quoted below), and in so doing, held that the movant was not a "crime victim" of an antitrust conspiracy case when the harm was that the movant was fired for refusing to participate in the conspiracy and blackballed from employment until he stopped working with the government. The Court emphasized that those harms are not inherently criminal or normally associated with antitrust conspiracy.

> [W]e must (1) look to the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were "directly and proximately harmed as a result of the commission of [that] Federal offense." In re McNulty, 597 F.3d at 351.

Thus, as noted in *McNulty,* the District Court should look to the offense of conviction and the facts admitted by the defendant in determining from what "Federal offense" the alleged harm was directly and proximately caused.

Lastly, the movants appear to argue that because U.S.S.G. Section 2D1.1(d)(1) cross references the murder statute, then the Guideline "expressly requires consideration of Defendant's threat to murder, and murder of, Mr. Henriquez." This curious argument renders meaningless the CVRA requirement that any harm must be the proximate and direct result of the commission of a Federal offense. Section 2D1.1 applies only to a violation of United States law, and not to the alleged violation of Colombian drug trafficking or homicide laws, and is not a basis independent of the CVRA under which a crime victim can seek relief.

## B. The scope of the defendant's conduct

The defendant pleaded guilty to conspiracy to distribute cocaine, knowing and intending the cocaine would be imported into the United States. That guilty plea was supported by a detailed statement of facts agreed upon by the government and defendant. It is telling that

the offense of conviction does not, in its essential elements, contain an element relating to violence or force.  Further, the detailed statement of facts does not include any reference to Mr. Henriquez or the death of Mr. Henriquez.  Nor has the defendant been charged with, or admitted to in a United States court, any acts of violence or force, such as the killing of Mr. Henriquez.

The movants wrongly summarize the government's characterizations of the conspiracy.  The government did not state in its filing and does not now maintain that the defendant's criminal conduct lacked violent acts, as claimed by the movants at page five of its filing. Rather the government stated that any act of violence committed by the defendant is not conduct underlying an element of the conspiracy offense charged or one to which the defendant pleaded guilty.

The district court should look to the statutory definition of the crime to which the defendant pleaded guilty, Title 21, United States Code, Sections 959(a) and 963, as well as the statement of facts which supported the guilty plea, to determine the "Federal offense" from which Mr. Henriquez was (allegedly) directly and proximately harmed.

### C. Mr. Henriquez was not directly and proximately harmed as the result of the commission of a Federal offense

Once the district court in the instant case makes a factual inquiry to determine the scope of the defendant's criminal conduct in terms of the Federal offense he committed, the court must then address the key question as to whether Mr. Henriquez is a person "directly and proximately harmed as a result of the commission of a Federal offense." CVRA, Section (e). The court should use the traditional but for and proximate cause analysis.  At least two circuit courts have been called upon to determine whether a crime victim was harmed as the direct and proximate result of the commission of a Federal offense.

In *In re Rendon Galvis,* 564 F.3d at 175, the court noted that Rendon's son was murdered by AUC paramilitaries under the nominal control of Diego Murilla. Murilla pleaded guilty in Colombia to killing Murilla and others, on the theory he (Murilla) was responsible as the AUC commander. Extradited to the United States, Murilla pleaded guilty to conspiracy to distribute cocaine, knowing or intending the cocaine would be imported into the United States. The Second Circuit, in determining that Rendon's son was not a victim under CVRA, employed primarily a factual analysis from which the Court concluded there was not enough evidence to demonstrate that the defendant killed the "victim." The requirement that the victim be "directly and proximately harmed as a result of the commission of a Federal offense" encompasses the traditional "but for and proximate cause analyses." Id. at 175. And, the "necessary inquiry is a fact-specific one." Id.

In *In re Antrobus,* 519 F.3d 1123 (10th Cir 2008), the court wrestled with the issue of whether a young woman killed with four others at a shopping mall was a victim under the CVRA. In that case, one Sulejman Talovic, a juvenile, bought a handgun from McKensie Hunter. This was the handgun Talovic used to kill the people at the shopping mall. Talovic had become a legal adult at time of the murders. Hunter was charged with violating federal law and the parents of one of the decedents sought relief under the CVRA. The factual analysis used by the court is illuminating on the requirement of direct and proximate cause:

> The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e). While acknowledging that Ms. Quinn [the decedent] undeniably was a crime victim, the district court held that she was not a victim of the particular crime to which Mr. Hunter pleaded guilty, because Mr. Hunter's offense and Talovic's rampage were too factually and temporally attenuated." *Hunter,* 2008 WL 53125, at *4. Following the rationale of *United States v. Sharp,* 463 F.Supp.2d 556 (E.D.Va.2006), the district court determined that Talovic's actions were an "independent, intervening cause" of Ms. Quinn's death. *Id.* at *5.

This is a difficult case, but we cannot say that the district court was clearly wrong in its
conclusion. The only court that has decided an analogous case under the CVRA held that
the movant was not a "crime victim" under that statute. *See Sharp,* 463 F.Supp.2d 556.
Based on its factual finding that Mr. Hunter was unaware of Talovic's intentions for the
firearm, to find for the Antrobuses we would have to determine that selling a gun to a
minor is the proximate cause of any resulting injury to third persons. This area of the law,
however, is not well-developed and is evolving. While authority is mixed in the common
law context, some courts have held as a matter of law that proximate cause does not exist
between a sale of a firearm to a person statutorily disqualified from making the purchase
and later injuries to a third person through use of the firearm. *See, e.g., Robinson v.
Howard Bros. of Jackson, Inc.,* 372 So.2d 1074, 1076 (Miss.1979). Others have held that
proximate cause can be found in some such circumstances but may not (as would be
required here) be found on a *per se* basis. *See, e.g., Olson v. Ratzel,* 89 Wis.2d 227, 278
N.W.2d 238, 250, 249–51 (1979); *Phillips v. Roy,* 431 So.2d 849, 853 (La.Ct.App.1983).
Such questions have not yet been decided in this jurisdiction. Finally, at most, the statute
Mr. Hunter violated indicates the foreseeability of the foolish (or, sadly, as here, worse)
use of firearms by juveniles. But such foreseeability does not obviously extend to an
individual who employs a gun only after becoming an adult as a matter of law. And here,
the Antrobuses have not shown that Talovic was still a juvenile when he committed the
murders more than seven months after purchasing the handgun from Mr. Hunter. *See* 18
U.S.C. § 922(x)(5) (defining juvenile as a "person who is less than 18 years of age"). In
light of these circumstances, we cannot say that the Antorbuses' right to the writ is "clear
and indisputable." *Allied Chem. Corp.,* 449 U.S. at 35, 101 S.Ct. 188 (quotations
omitted).

In re Antrobus, 519 F.3d at 1125-26.

The movants cannot show by a preponderance of the evidence that Mr. Henriquez was

directly and proximately harmed as a result of the defendant's commission of a Federal offense.

As pointed out in *In re Rendon Galvis,* it is not enough that a defendant has accepted

responsibility in Colombia for the harm caused to a decedent (whose family members seek relief

under CVRA). And as pointed out in *In re Antrobus,* even where a juvenile used an illegally

purchased firearm to kill others seven months after the purchase, the crime of selling a firearm to

a minor is too factually and temporally attenuated to be the proximate cause of a rampage which

occurred when the minor became an adult. In the instant case, the crime of distributing cocaine

knowing it would be imported into the United States, is too attenuated from the death of Mr. Henriquez to be the proximate cause of his death.

Even assuming the decedent was killed in furtherance of the defendant's drug trade, which the government does not concede and which is not clear from the excerpts of foreign documents selectively translated and offered by the movants, the decedent may have been killed for other reasons. The tragic reality is that the decedent may have been targeted because he was a former guerilla member, not because he was an activist, or he may have been a victim of the defendant's domestic Colombian criminal activity, which would include drug trafficking, terrorism, extortion, murder, assault, and the like. The nexus between the decedent and the United States criminal offense conduct, versus all criminal conduct of the defendant, is too tenuous. First, the defendant and his co-conspirators committed violent acts in Colombia for reasons other than any connection to the United States, such as domestic political and territorial reasons. Second, not all drug trafficking conduct of the defendant during the nine years of the charged conspiracy pertains to the narrow United States drug-trafficking charge against him, but only that conduct related to manufacture and distribution of cocaine destined for importation into the United States. There is no evidence that the killing of the decedent, tragic as it is, was related to the offense charged or the crime to which the defendant pleaded guilty. As a result, the movants have not met their burden of establishing that Mr. Henriquez was harmed as the direct and proximate result of the commission of a Federal offense. As a result, the movants do not meet the definition of a victim under the CVRA.

The movants seek to support their slight proximate cause argument by reference to the government's motion for pretrial detention, in which the government noted that the defendant told coca farmers in the territory controlled by the defendant to sell their cocaine to the defendant

"under penalty of death." However, the standards for detention and facts related to that standard, are different and broader than those used to prosecute a defendant for an offense. For a detention motion, violent acts of a defendant totally unrelated to the offense conduct are relevant for a court's determination of whether to release a defendant pending trial. A reference to violence is not an admission by the government that the violent conduct was specifically in furtherance of the charged conspiracy. This was part of the government's argument to show that the defendant was a risk of flight and a risk to re-offend or harm the public in general, and that he should therefore be detained. However, the government's argument at the detention hearing did not mention Mr. Henriquez and in no way referred to Mr. Henriquez. The movants, in fact, do not claim that Mr. Henriquez was one of the threatened coca farmers.

The government does not deny that the AUC, of which the defendant was a prominent commander, used force and violence to carry out its objectives. Nor does the government deny that the defendant himself threatened violence, or directly or indirectly ordered men under his control to threaten violence or carry out acts of violence. In fact, as the movants point out, a court in Colombia found the defendant responsible for the death of Mr. Henriquez, as the defendant was the nominal commander of the AUC soldiers in the area where Mr. Henriquez was killed. But the key inquiry is whether Mr. Henriquez was directly and proximately harmed as a result of the commission of a Federal offense, and neither the AUC's use of force and violence nor the defendant's acceptance of responsibility for Mr. Henriquez' death proves that Mr. Henriquez' death was linked to a violation of the law of the United States.

Further, in their submission of February 13, 2015, the movants fail to address the evidence that refutes their claims of direct and proximate cause. The Colombian court

which found the defendant responsible for the death of Mr. Henriquez noted that there were multiple reasons for why Mr. Henriquez might have been killed, including the fact that Mr. Henriquez was a former member of another leftist guerilla organization and that Mr. Henriquez' presence in AUC controlled territory was not well received and may have been viewed as a threat. Further, in their 2010 filings, the movants proffered the statements of two former AUC members, who claimed to have knowledge of the death of Mr. Henriquez, to show that Mr. Henriquez was harmed as the direct and proximate result of the commission of a Federal offense. However, the movants overstated the motivations ascribed to the defendant by these alleged witnesses, and omitted key portions of the witness's statements. For instance, witness Alberto Manjarres Charris said he did not know the reasons why the defendant had to send people to kill Mr. Henriquez and later said it was because Mr. Henriquez refused to obey orders to leave the area. Also, the other proffered witness, Carmelo Sierra Urbina, noted that Mr. Henriquez apparently failed to wear or carry an identification card indicating he had been cleared to be in the AUC area and refused to meet with the defendant and his men, and that these constituted the reasons to harm him.

The defendant, as a leader of an AUC paramilitary bloc, was conducting a civil war against other rival guerrilla groups, including but not limited to the FARC. To raise money, the AUC leaders engaged in a variety of illegal activities, including drug trafficking, taxing all aspects of the drug business, taxing legitimate business activity in the AUC controlled areas, theft of land, extortion, cattle thefts, diverting oil from pipelines, government kickbacks, and bribery, to mention a few. Mr. Henriquez' death was a domestic Colombian crime which could have occurred for any number of reasons unrelated to the commission of the Federal offense at issue in this case, and the movants have failed to show that the harm to Mr. Henriquez was the direct and proximate result of the commission of a Federal offense.

To the extent the movants argue a novel and expanded definition of "crime victim," there are important practical considerations that argue against such an interpretation for foreign victims. By acknowledging the movants as statutory victims of the limited United States drug importation charge, the District Court would essentially throw open the doors of United States courts to any individual in any country tangentially harmed by any conduct connected to a United States offense. In this case, when the putative victim is one of possibly thousands or tens of thousands of victims of an ongoing decades-long, civil war in a foreign country, many of whom can tie their victimization to the domestic Colombian drug trafficking trade, expanding the current interpretation of a victim under the CVRA in this case may have the effect of overwhelming United States courts in certain cases involving extraterritorial crime, while at the same time duplicating and undermining efforts by the government of Colombia to ensure victims' rights and remedies. Under its Justice and Peace Law of 2005, the government of Colombia has given victims certain rights and benefits, so this is not a situation where the family of Mr. Henriquez has no other recourse.

## II. THE PUBLIC NATURE OF FUTURE HEARINGS

At the time the Petitioners filed their first CVRA request in this matter, the defendant Serna had already pleaded guilty under seal. As a result, they were not prejudiced by the failure to recognize them as CVRA victims, as they were never kept out of a substantive hearing, public or sealed, from the time they filed their request until the present.

Any future sentencing hearing should be open to the public, except for any portion of the matter which would properly be discussed at a side bar outside the presence of the public. The government is not opposed to the movants attending such a hearing, as any member of the public would be able to do, or writing to the court or, if the court permits, independently filing

matters appropriate to sentencing (assuming notice is given to the parties).  However, assuming the movants are determined not be "crime victims" under the CVRA, and absent a court order to the contrary, the government would not provide them with copies of any plea agreement or statement of facts, nor would the government make available to them any information or transcripts from previous hearings.

**CONCLUSION**

For the reasons set out above, the government urges the District Court to find that the movants are not "crime victims" as that term is defined under the CVRA.

Further, for reasons previously submitted and known to the court, the government would request that the District Court seal this response.  Future responses concerning the CVRA likely do not need to be filed under seal, but that is a matter the parties and the movants will need to first address with the District Court.

Respectfully submitted,

_____-s- Paul W. Laymon

Paul W. Laymon
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division, Department of Justice
(202) 514-1286
paul.laymon@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing motion was provided to defense counsel Robert Feitel and counsel for movants on March 2, 2015 via electronic mail and/or fax.

-s- Paul Laymon
Paul Laymon
Trial Attorney