IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff<br>v.<br><br>GIRALDO SERNA<br><br>        Defendant<br><br>Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, and Bela Henríquez Chacín:<br><br>        Movants. | CASE NO.: 1:04-cr-00114-1 RBW |

**MOVANTS' SENTENCING SUBMISSION**

## INTRODUCTION

The widow and children of Julio Henríquez Santamaria, Zulma Natazha Chacín de Henríquez ("Zulma"), Nadiezhda Natazha Henríquez Chacín ("Nadiezhda") and Bela Henríquez Chacín ("Bela"), have long struggled in both Colombia and the United States to obtain redress for their loved one's abduction and murder.

Although Defendant Hernán Giraldo Serna ("Defendant" or "Giraldo Serna") was convicted and sentenced by a Colombian criminal court for Mr. Henríquez's forced disappearance, the case before Your Honor prevented the Defendant from serving any part of that sentence because he was extradited to face this charge. Mr. Henríquez's family now seeks a measure of justice at sentencing before this Court. To this end, this submission will provide this Court a fuller accounting of the Defendant's criminal history in Colombia – including, facts and documents that it appears neither the Defense nor the Government have made available.

In addition, they offer their very personal views on the immeasurable and irreversible loss they suffered as a result of Defendant's crime. This information should inform a sentence that reflects both the enormity of the eleven-year cocaine manufacture, distribution, and importation conspiracy, in furtherance of which Mr. Henríquez was abducted, tortured, and murdered; and this Defendant's uniquely despicable lifetime of outrageous criminal conduct.

## BACKGROUND

Giraldo Serna is a self-admitted drug-trafficker, rapist, drug warlord, terrorist, and a convicted mass murderer.[1] Any criminal history of Defendant based only on U.S. convictions

---

[1] Escrito para el Desarrollo de Audiencia Concentrada de Formulación y Aceptación de Cargos, Hernán Giraldo Serna at 17 (hereinafter "Justice and Peace Indictment"), attached as Exhibit ("Ex.") 1 to the Declaration of Roxanna M. Altholz, filed concurrently herewith. During the Justice and Peace process, *see* below at 6-9, the prosecutor verifies the truthfulness of the defendant's confession and formulates charges before a magistrate judge. In this document, the Justice and Peace prosecutor provides an analysis of the context in the Sierra Nevada region at the time the Defendant committed his crimes, an overview of Defendant's criminal history, a list of the charges that specifies whether the Defendant has accepted criminal responsibility among other details. Charges that Defendant admitted were then sent to a special judicial chamber. It was a time-consuming process to obtain a copy of the document which made it impossible to authenticate or translate the document before the Court's deadline
(continued...)

1

would fail to capture the seriousness of Defendant's crimes, the likelihood of recidivism, and the terror his surviving victims continue to suffer. Over four decades, the Defendant tortured, forcibly disappeared, murdered, and forcibly displaced thousands, according to criminal convictions in Colombia and his own testimony.[2] Defendant has also testified that he sexually assaulted dozens of women, including girls as young as twelve.[3]

This Court is going to sentence a convicted mass murderer who exploited his illicit position of power for his sexual and financial gain. The sentence should reflect that and be no less than the maximum based on this Defendant's criminal history, background, and character. 18 U.S.C. § 3553(a). The sentence this Court imposes should send the strongest of messages to deter Defendant's own future criminal conduct, protect the public from him, and forewarn foreign drug lords that the United States will not to turn a blind eye to their despicable behavior irrespective of where it may occur. Defendant, now in his late sixties, has led a life of crime since the age of twenty-one. If Defendant returns to Colombia, Mr. Henríquez's family members expect he will continue to engage in illegal activities and to use violence to terrorize and reassert his control over every aspect of community life in the Santa Marta region.[4] This Court should assure that he is forever denied that opportunity by imposing the maximum sentence.

This Court should also use its discretion to reject any request by the Government or defense to reduce Giraldo Serna's based on purportedly assisting law enforcement. The government may seek a 5k.1, and maybe even a 3553(e), downward departure. Of course,

---

(...continued from previous page)
for this submission. We requested an extension of time on September 29, 2019 in part to obtain an authenticated and certified copy of this document from Colombia and translate relevant portions. The Government was willing to stipulate to such an extension, Defendant was not, and we did not receive a response from this Court as of the time of this filing.

[2] *Id.*

[3] *Id.* at 386-451.

[4] Letter from Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, Bela Henríquez Chacín, and Julio Henríquez Chacín to Honorable Reggie B. Walton, United States District Court for the District of Columbia (Sept. 2015) (Ex. 2) at 1, 3.

everyone "understands that the Court is not obligated to follow any recommendations" of the government, and the sentence "is a matter solely within the discretion of the Court." *See* Plea Agreement (ECF No. 503) at ¶ 9.  This Court should therefore reject any request to reward this Defendant – a top drug kingpin who is responsible for devastating a community – even if he may have belatedly cooperated with the government after a life-time of perpetrating atrocities. In a case involving other notorious defendants, Judge Lamberth of this Court wrote:  "To put it bluntly, the Court is surprised and disappointed by the United States Attorney's position to not oppose the present motions.  It is puzzling to see the government shrug off the starkly violent and calculating natures of the underlying crimes as [the government] allows the defendants' nearly exclusive focus on their post-conviction conduct to go unchallenged." *United States v. Butler*, No. Crim. 89-162-2, --F. Supp. 3d --, 2015 WL 5513484, at *6 (D.D.C. Sept. 16, 2015).The Defendant admitted that he had at least 2,000 paramilitary fighters under his command to provide "protection" to drug traffickers.

Mr. Henríquez's family members are providing this Court with indisputable evidence that he used those fighters to murder, rape, torture, and expel civilians from their land.[5]  It would be disturbing if the U.S. government sought to reward "cooperation" from such an individual and also implausible that the Defendant would have any value as a cooperating witness given his criminal history in Colombia and its impact on his credibility.  Regardless, because the sentence is *solely within the discretion of the Court*, this Defendant should not be rewarded in this proceeding.

In 1969, at the age of twenty-one, Giraldo Serna moved to an area near the city of Santa Marta on the northern coast of Colombia.[6]  Defendant began his criminal career in the 1970's cultivating and transporting marijuana through the Sierra Nevada mountains to the Caribbean

---

[5] Justice and Peace Indictment; Conviction (Ex. 7 to the Response of the United States to Order to Show Cause in Connection with Motion to Enforce Rights Under the Crime Victims' Rights Act (ECF No. 200)).

[6] Justice and Peace Indictment at 17.

coast where it was then shipped to the United States.[7] In 1977, he started a criminal gang, known as "Los Chamizos" (Burnt Trees) that engaged in so-called "social cleansing" campaigns[8] and provided protection to local drug dealers.[9]

Beginning in the 1980s, Defendant established paramilitary groups in the area by forcing local farmers to become armed fighters. Giraldo Serna threatened local communities that he would consider those who did not join his private militias guerilla sympathizers and expel from the region.[10] Between approximately 1998 and 2005, Giraldo Serna was in command of between 500 and 2,000 paramilitaries and had a personal security detail of around 200 men.[11] Although he began as a commander for local paramilitary forces operating in the Sierra Nevada, he became a paramilitary leader in the United Self-Defense Forces of Colombia ("AUC"), a national federation of paramilitary forces.[12] In 2001, the AUC was designated a terrorist group by the United States government because of its use of "violent means to maintain total control and to protect their significant sources and supplies of cocaine."[13] According to the U.S. government, the AUC was "responsible for 70% of the human rights violations in Colombia" and Giraldo Serna and his lieutenants were "among the most feared and dangerous criminals in Colombia."[14]

---

[7] *Id.*

[8] Social cleansing refers to the killing of members of society considered "undesirable," including but not limited to, criminals, addicts, street children, the elderly, sex workers, and sexual minorities.

[9] Justice and Peace Indictment at 22.

[10] *Id.* at 21.

[11] Statement of Facts (ECF No. 505) at 2.

[12] Second Superseding Indictment (Mar. 2, 2005).

[13] International Narcotics Control Strategy Report, U.S. Department of State (2006) (Ex. 3); International Narcotics Control Strategy Report, U.S. Department of State (2007) (Ex. 4).

[14] Press Release, Drug Enforcement Administration, Colombian Terrorists Arrested in Cocaine-for-Weapons Deal (Nov. 6, 2002) (Ex. 5).

**THIS SENTENCE SHOULD REFLECT DEFENDANT'S CRIMINAL CONVICTIONS IN COLOMBIA**

Defendant lived most of his adult life outside the law and violently attacked those who sought to hold him accountable.[15] Yet, Colombian criminal courts nevertheless convicted Hernán Giraldo Serna in at least two cases.[16] In 1988, fighters under Giraldo Serna's command travelled from the northern coast of Colombia to the Urabá region of the department of Antioquia. There, they entered the La Honduras farm with a list of names and murdered seventeen unarmed farm workers who were members of the local banana workers union.[17] The fighters then went to a neighboring farm and killed three more workers who were also union members.[18] In 1991, a trial court in Bogota, Colombia convicted Giraldo Serna of criminal conspiracy with aggravating circumstances and sentenced him *in absentia* to twenty years in prison and ordered him to pay compensatory damages.[19] An appeals court affirmed the decision in 1992.[20] The investigating judge who identified some of the masterminds of the

---

[15] Colombia's Attorney General has also established that Giraldo Serna declared three Colombian state investigators, who were investigating the deaths of a paramilitary leader and three anti-narcotics Colombian police officers, "military objectives," which triggered their 2001 murder by AUC paramilitaries. Alias 'Verrugita' Asegurado Por Crimenes de Agentes de CTI, Fiscalía General de la Nación (Feb. 23, 2010) (Ex. 6).

[16] Upward departures based on foreign convictions are expressly contemplated by the Sentencing Guidelines. U.S.S.G. § 4A1.3. Courts have routinely based upward departures on foreign convictions. *United States v. Port*, 532 F.3d 753 (8th Cir. 2008) (affirming the District Court's upward departure based on convictions in the United Kingdom); *United States v. Korno*, 986 F.2d 166 (7th Cir. 1993) (affirming the District Court's upward sentencing departure based on Canadian conviction where defendant's criminal history category underrepresented the seriousness of prior criminal conduct); *United States v. Concha*, 294 F.3d 1248, 1254 (10th Cir. 2002) (affirming the District Court's consideration of defendant's foreign offenses in assessing the propriety of an upward departure under section 4A1.3 finding that defendant's "foreign convictions, while outside the applicable time period, are sufficiently serious to be considered and may be considered . . . .").

[17] Justice and Peace Indictment at 21. *See also* Colombia's Killer Networks, Human Rights Watch (Nov. 1996) (Ex. 7); Report No. 2/94, Inter-American Commission on Human Rights (Feb. 1, 1994) (Ex. 8).

[18] *Id.*

[19] Justice and Peace Indictment at 21.

[20] *Id.*

5

massacre was forced to leave the country for her safety; her father was subsequently murdered, as was her replacement and two bodyguards.[21]

On March 20, 2007, the Defendant was charged in Colombia for conspiracy to commit a criminal act and for the aggravated forced disappearance of Julio Henríquez Santamaria. The Defendant was convicted and sentenced for Mr. Henríquez's forced disappearance on January 21, 2009. According to the conviction, several of the Defendant's fighters barged into a meeting Julio Henríquez had organized to teach local farmers to grow crops besides coca, the main ingredient of cocaine, and forced Mr. Henríquez into a white pick-up truck. He was never seen alive again. His body was discovered six years later when the Defendant finally revealed the location of the unmarked grave. Mr. Henríquez had been tortured before being killed with two gunshot wounds to his head.[22]

The conduct established by these criminal convictions, without more, justify a maximum sentence in this case. They demonstrate a calculated disregard for human life in pursuit of power and profit.

### THE SENTENCE SHOULD REFLECT DEFENDANT'S ADMISSIONS TO UNCONVICTED CRIMINAL CONDUCT IN COLOMBIA

The scope and nature of Hernán Giraldo Serna's criminal activities were not revealed, however, until he became a participant in a specialized legal process established by the Colombian government for demobilized members of paramilitary and other armed groups. In 2005, the Colombian Congress enacted the Justice and Peace Law.[23] The law is an uncomfortable compromise of a fundamental dilemma: how to motivate fighters facing long prison sentences for criminal activity to lay down their arms and return to civilian life.

---

[21] Ex. 7.

[22] Expert Autopsy Report (Declaration of Joshua A. Holzer in Support of Opposition Memorandum in Support of Motion to Enforce Rights Under the Crime Victims' Rights Act (ECF No. 212) Ex. 13 at 2-3).

[23] Ley 975 de 2005, Diario Oficial No. 45.980 (July 2005) (Ex. 9).

Under the Justice and Peace Law, demobilized fighters are eligible to receive a significant reduction in criminal sentences if they turn over their weapons, cease criminal activity, testify truthfully about past criminal activities, and turn over illegally acquired assets.[24] The law created the Justice and Peace Prosecutor's Office to investigate and Justice and Peace Courts to adjudicate criminal liability and impose criminal sanctions.[25]

The law requires participants to give "versiones libres" ("open testimonies") about their crimes.[26] Defendants are eligible for sentence reductions after they are charged, admit responsibility for the crimes, and are found guilty and sentenced by a Justice and Peace court.[27]

Since 2007, Defendant has provided testimony about his criminal activities. He has confessed to hundreds of crimes affecting thousands of victims.[28] Giraldo Serna is currently awaiting a decision by a Justice and Peace court for those crimes, including forced disappearances, forced displacements, homicide, torture, illegal recruitment of minors, and sexual violence.[29]

The Justice and Peace prosecutor has charged Defendant with 863 counts of homicide and forced disappearance for which Giraldo Serna has accepted criminal responsibility for 460 counts, including forced disappearances and killings committed in violation of the laws of war.[30] By his own admission, Defendant "disappeared" scores of civilians, including suspected informants for law enforcement,[31] persons who breached his social norms (such as suspected thieves, prostitutes, and alcoholics), and persons who undermined his territorial control of the

---

[24] *Id.*
[25] *Id.* at Art. 15.
[26] *Id.* at Art. 17.
[27] *Id.* at Arts. 18-24.
[28] Justice and Peace Indictment at 63-1939.
[29] *Id.*
[30] *Id.*
[31] *Id.* at 143-194, 220-225.

area.[32] He has admitted to killing all these victims of forced disappearance. The bodies of the victims were dismembered, buried in clandestine graves, or dumped into rivers.[33]

Giraldo Serna has also admitted responsibility in thirty-five cases of gender-based violence:[34] these cases include twenty-nine counts of rape,[35] and seventeen torture charges.[36] Giraldo Serna admitted to raping fourteen of the victims, including eleven girls under the age of fourteen.[37] Many of the victims became pregnant as a result of the rapes.[38]

One typical case involved a girl who met the Defendant when she was thirteen years old. Defendant confessed that "[in] 1985, [he] had sex with [the minor] when she was barely 13 years old . . . . [Defendant] had previously had sexual relations with her sister . . . . As a result of the relations between [the victim] and Hernán Giraldo a little girl was born who was registered with the name of Cindy Giraldo Ochoa."[39]

Giraldo Serna also admitted to using rape, false imprisonment, and torture as a method of social control over local communities and is charged as an accomplice for counts related to those crimes.[40] Giraldo Serna has also been charged with and admitted counts related to the crimes of illegal recruitment of minors, forced displacement, electoral fraud, kidnapping, extortion, illegal seizure and destruction of property, exaction of arbitrary contributions, and acts of terrorism.[41]

---

[32] *Id.* at 244-349.
[33] *Id.* at 67.
[34] *Id.* at 367-444.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 392.
[40] *Id.*
[41] *Id.* at 63-1939.

Defendant is no ordinary drug dealer. He is a "narcotics kingpin" according to the U.S. government,[42] and a mass murderer and serial rapist according to criminal convictions and confessions in Colombia. As the leader of a paramilitary organization, Giraldo Serna bears the greatest responsibility for the extraordinarily cruel tactics – murder, torture, rape – used to hold an entire region hostage. As such, this Defendant deserves no leniency and the exercise of the Court's sole discretion should not *reward* this Defendant even if he can be said to have provided substantial assistance to law enforcement.

### THE SENTENCE SHOULD REFLECT THE PAIN AND SUFFERING DEFENDANT CAUSED THE FAMILY MEMBERS OF MR. HENRÍQUEZ AND SO MANY OTHERS

Even fourteen years after his disappearance, Julio Henríquez's family members struggle to recover from the devastating impacts of Defendant's crimes. According to the family, the passage of time has made this struggle harder not easier. In a letter to this Court, the family reveals that "[p]hysical, mental and spiritual well-being becomes more challenging every day."[43]

The Henríquez family not only mourns the loss of their husband and father but the loss of the dream he had for their community. Julio Henríquez, a "brave and generous" man, wanted to provide farmers with the opportunity to free themselves from the Defendant's bondage by growing crops other than coca. "The disappearance of a leader is a sophisticated strategy to remove from the root the alternatives, options and hope to live a decent and balanced life[,]" they write.[44] "Disappear the man, disappear his actions, disappear his ideas."[45]

Their hope rests in the possibility that the region of Santa Marta has moved passed the days when "Hernán Giraldo [] killed and disappeared people, [] reshaped the population of entire communities, stole[] land, [] enslaved peasants to plant coca in exchange for the land he

---

[42] Designations Pursuant to the Foreign Narcotics Kingpin Designation Act, U.S. Department of the Treasury (Aug. 27, 2015) (Ex. 10); Recent OFAC Actions, U.S. Department of the Treasury (Feb. 2004) (Ex. 11).

[43] Ex. 2 at 2.

[44] *Id.*

[45] *Id.*

took from others or in exchange for the right to stay on their land, [and] [] sexually abused girls turning many of them into the mothers of his children . . . ."[46]

This hope is tempered by the fear of Hernán Giraldo's return, and therefore Mr. Henríquez's family members request this Court use its discretion to impose a sentence that reflect this Defendants criminal history.  They write:

> Maybe it is possible to end [Defendant's] influence in the drug business with a long sentence, perhaps an exemplary sentence which exposes the crimes he committed to protect his illicit business is still possible, perhaps in this beautiful land we can recover from so much damage perhaps as a family we can recover from so much pain and so much damage, but we need your wisdom and your heart.[47]

Mr. Henríquez's family members also respectfully request the opportunity to speak at sentencing but, regardless of the Court's decision regarding their request, they will attend the proceeding to bear witness to the fate of a man who irrevocably changed for the worse the course of their lives and thousands of others.

Dated:  October 2, 2015          WILSON SONSINI GOODRICH & ROSATI
                                 Professional Corporation


                                 By:  /s/ Melissa Mannino
                                     MELISSA MANNINO
                                     D.C. Bar No. 446154
                                     WILSON SONSINI GOODRICH & ROSATI
                                     PROFESSIONAL CORPORATION
                                     1700 K Street, NW
                                     Fifth Floor
                                     Washington, DC 20006-3817
                                     Telephone:  (202) 973-8800
                                     Facsimile:   (202) 973-8899
                                     mmannino@wsgr.com

                                     *Counsel for Movants Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, and Bela Henríquez Chacín*

---

[46] *Id.* at 1.
[47] *Id.* at 3.