# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>HERNAN GIRALDO-SERNA, et al.,<br><br>Defendants. | )<br>)<br>)<br>) CASE NO.: 1:04-cr-00114-RBW-1<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOVANTS' RESPONSE TO DEFENDANT'S**
**POST REMAND MEMORANDUM**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I. MOVANTS HAVE ESTABLISHED THAT THE DRUG CONSPIRACY WAS A "BUT FOR" CAUSE OF THE MURDER OF MR. HENRÍQUEZ ............................... 2

    A. The D.C. Circuit Order Reaffirmed That The CVRA Only Requires That Harm To A Victim Be Direct And Proximate ........................................................ 2

    B. While The Conspiracy Is Arguably Not The *Only* Cause Of The Murder Of Mr. Henríquez, It Is A *But-For* Cause .............................................................. 2

II. THE COLOMBIAN CONVICTION IS ADMISSIBLE AS EVIDENCE OF DEFENDANT'S RESPONSIBILITY AND MOTIVE FOR THE MURDER OF MR. HENRÍQUEZ ......................................................................................................... 4

CONCLUSION ..................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allianz Suisse Versicherungs-Gesellschaft v. Miller*,
   24 F. Supp. 3d 670 (W.D. Mich. 2014) ................................................................................5

*Crawford v. Jackson*, 323 F.3d 123 (D.C. Cir. 2003)..................................................................7

*Donnelly v. F.A.A.*, 411 F.3d 267 (D.C. Cir. 2005) .....................................................................5

*Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*,
   No. CIV.98 3096, 2007 WL 1876392 (D.D.C. June 28, 2007) ............................................5

*Hilton v. Guyot*, 159 U.S. 113 (1895) ..........................................................................................5

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
   474 F. Supp. 2d 19 (D.D.C. 2007) .........................................................................................5

*Small v. United States*, 544 U.S. 385 (2005) ...............................................................................6

*Society of Lloyd's v. Reinhart*, 402 F.3d 982 (10th Cir. 2005) ....................................................5

*United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007) .................................................................7

*United States v. Concha*, 233 F.3d 1249 (10th Cir. 2000) ..........................................................6

*United States v. Garcia Abrego*, 141 F.3d 142 (5th Cir. 1998) ...................................................3

*United States v. Green*, 175 F.3d 822 (10th Cir. 1999) ...............................................................3

*United States v. Portillo-Quezada*, 469 F.3d 1345 (10th Cir. 2006) ...........................................3

*United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996)................................................................7

### STATUTES

18 U.S.C. § 3771(a) .......................................................................................................................1

### RULES

Fed. R. Evid. 1101(d)....................................................................................................................6

### MISCELLANEOUS

Edward J. Imwinkelried, *The Second Coming of Res Gestae: A Procedural
   Approach to Untangling the "Inextricably Intertwined" Theory for
   Admitting Evidence of an Accused's Uncharged Misconduct*, 59 CATH. U.
   L. REV. 719 (2010) ................................................................................................................3

Federal Judicial Center International Litigation Guide: *Recognition and
   Enforcement of Foreign Judgments*, 74 U. PITT. L. REV. 491 (Spring 2013) ......................6

## INTRODUCTION

Since 2010, Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, and Bela Henríquez Chacín ("Movants"), the wife and daughters of Julio Eustacio Henríquez, have sought recognition of their rights under the Crime Victims' Rights Act ("CVRA"). Mr. Henríquez was murdered by Hernán Giraldo-Serna ("Defendant"). The Defendant ordered his murder in 2001 in furtherance of the conspiracy to which the Defendant pled guilty in this Court. That is established by the Defendant's conviction in a Colombian court, the evidence that supported that conviction, the plea materials, and Government pleadings. During nearly six years of litigation, neither the Defendant nor the government has offered any evidence in support of their opposition to recognition of Movant's CVRA rights. Instead, they have argued that the evidence submitted by the Movants indicates that Mr. Henríquez was murdered for multiple reasons.

Movants have satisfied the statutory definition of "crime victim" because Mr. Henríquez's death was directly and proximately caused by the conspiracy. On October 16, 2015, the United States Court of Appeals, District of Columbia Circuit ("D.C. Circuit") clarified the causation standard according to which this Court should reconsider recognition of Movant's CVRA rights. The D.C. Circuit established that in order to be the "but for" cause of the Mr. Henríquez's murder, the conspiracy need not be the *only* cause of Mr. Henríquez's murder. Movants have satisfied the statutory definition of "crime victim" because Mr. Henríquez's death was directly and proximately caused by the conspiracy.

Movants respectfully submit that in light of the findings by the D.C. Circuit and the evidence submitted they have established they are entitled to the rights granted by the CVRA, including the right to be heard at Defendant's sentencing and the right to timely notice of any public court proceeding or release of the Defendant. 18 U.S.C. § 3771(a).

# ARGUMENT

## I. MOVANTS HAVE ESTABLISHED THAT THE DRUG CONSPIRACY WAS A "BUT FOR" CAUSE OF THE MURDER OF MR. HENRÍQUEZ

### A. The D.C. Circuit Order Reaffirmed That The CVRA Only Requires That Harm To A Victim Be Direct And Proximate

On October 16, 2015, the D.C. Circuit held that this Court had abused its discretion with respect to its Order of August 7, 2015, denying Movant's motion for CVRA status. Circuit Court Order ("Order"), attached hereto as Exhibit A for the Court's convenience; *cf.* ECF No. 505. In particular, the D.C. Circuit found that this Court misapplied the applicable standard in concluding that Movants are not victims of the conspiracy because there could have been more than a single cause for Defendant to order the murder of Mr. Henríquez. Order at 2 ("That there could be a multiplicity of possible 'but-for' causes does not mean that the drug conspiracy fails to qualify as a 'but-for' cause").

### B. While The Conspiracy Is Arguably Not The *Only* Cause Of The Murder Of Mr. Henríquez, It Is A *But-For* Cause

Movants submit that they have already established that the conspiracy was a "but-for" cause of Mr. Henríquez's murder. It is indisputable that: (1) Defendant's role in the conspiracy was protection of the conspiracy (including forcing area farmers to grow coca under penalty of death); (2) "logic allows for the inference – and Colombian court materials support – that Giraldo-Serna's paramilitary organization . . . employed violence and force as part of its method and operation" (Order at 1); (3) the abduction and killing took place in the same time/place as the conspiracy; (4) the abduction and killing were carried out by at least some of the same people Defendant has explicitly admitted were co-conspirators in the conspiracy; (5) the abduction and murder immediately furthered the object of the conspiracy (manufacturing cocaine); and (6) Mr. Henríquez was threatened and then murdered shortly after undertaking the activity designed to thwart the object of the conspiracy (encouraging local farmers not to grow coca).[1]

---

[1] While Mr. Henríquez's status as a former member of a guerilla group has been referenced as a potential additional motive, it is undisputed that Mr. Henríquez had lived in the same area

(continued...)

Defendant's killing of Mr. Henríquez was, therefore, in furtherance of the conspiracy to which he pled guilty here. It does not matter that the murder was not expressly charged as part of the conspiracy because, as the D.C. Circuit noted, this Court is not limited to considering only the facts stated in the indictment and plea agreement. Order at 1. Moreover, "[i]n a conspiracy prosecution, unchanged acts 'committed in furtherance of the charged conspiracy are themselves part of the act charged.'" *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006) (quoting *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999)) (allowing proof of an uncharged murder in drug conspiracy prosecution); *United States v. Garcia Abrego*, 141 F.3d 142, 174-75 (5th Cir. 1998) (allowing proof of uncharged murders in drug conspiracy prosecution).[2] Consequently, the conspiracy is a "but-for" cause of the murder.

The conviction of Defendant in Colombia *proves* that Mr. Henríquez was killed because of his opposition to the conspiracy. After contemporaneously considering multiple forms of evidence, such as witness statements submitted by Defendant's own men and the arguments of counsel (including Defendant's counsel),[3] the Colombian court concluded that Defendant had Mr. Henríquez disappeared and killed because: (1) Mr. Henríquez was impeding the objectives of the AUC to continue planting coca, which Henríquez wished to see eradicated in order to cultivate cacao; and (2) Mr. Henríquez had long-before been a member of a guerilla group known as M-19. Conviction at 14.

---

(...continued from previous page)
controlled by Defendant peacefully for years before undertaking his anti-coca efforts and only – and immediately – after undertaking his actions contrary to the objective of the conspiracy was Mr. Henríquez threatened, abducted and killed.

[2] "A conspiracy allegation does not aver a discrete event; rather, the allegation describes a course of conduct. . . . An uncharged overt act can be part of the course of conduct even if the pleading does not expressly mention it." Edward J. Imwinkelried, *The Second Coming of Res Gestae: A Procedural Approach to Untangling the "Inextricably Intertwined" Theory for Admitting Evidence of an Accused's Uncharged Misconduct*, 59 CATH. U. L. REV. 719, 725 (2010) (citations omitted).

[3] Conviction at 8 (Ex. 7 to the Response of the United States to Order to Show Cause in Connection with Motion to Enforce Rights Under the Crime Victims' Rights Act (ECF No. 200)).

Notably, neither Defendant nor the Government have offered any independent evidence that refutes the findings of the Colombian court, and/or offer any other alternative motives that are in any way inconsistent with Defendant's role in the conspiracy. Nor does Defendant claim that he did not have the opportunity to challenge findings in the Colombian court, or pursue an appeal if he felt his conviction was in error. As explained below, Defendant makes a perfunctory and misplaced argument that his own unchallenged conviction should be ignored.

## II. THE COLOMBIAN CONVICTION IS ADMISSIBLE AS EVIDENCE OF DEFENDANT'S RESPONSIBILITY AND MOTIVE FOR THE MURDER OF MR. HENRÍQUEZ

In his most recent brief, Defendant largely ignores the evidence that establishes his motive for murdering Mr. Henríquez – much of which has been a part of the record for the better part of a decade – and argues that evidence of motive now needs to be established.[4] For example, Defendant disregards the plea materials that lay bare the obvious practical motive for the murder – to protect the manufacture of cocaine in the territory he controlled; the undisputed overlap of timing and events described above and detailed in multiple previous briefs; and the Defendant's acknowledged role in the conspiracy and Mr. Henríquez's murder. Acts of violence, such as Mr. Henríquez's murder, were an undeniable part of Defendant's role in the conspiracy. So much so that the D.C. Circuit indicated that Defendant's "paramilitary organization . . . employed violence and force as part of its method of operation." Order at 1.

Defendant ignores the overwhelming evidence of the nexus between Defendant's role in the conspiracy and the murder of Mr. Henríquez to focus on a few quotes cherry-picked from certain witness statements. Defendant then argues that this Court "should not rely upon the statements made during the Colombian process" to ascertain the motive of Mr. Henríquez's murder and asserts, in passing at the end of his brief, that this Court should also ignore the fact of

---

[4] Defendant has never denied that he did, in fact, both (1) order the murder of Mr. Henríquez, and (2) order the killing because Mr. Henríquez opposed the production of coca which was essential to the manufacture of cocaine.

4

his conviction in Colombia.[5] Defendant is wrong on both counts.

It is well-established that foreign criminal convictions constitute *prima facie* evidence of the facts underlying the judgment. *See Donnelly v. F.A.A.*, 411 F.3d 267, 270-71 (D.C. Cir. 2005). The D.C. Circuit was not troubled by relying on "the Colombian court materials" at issue here. Order at 1. Moreover, it is Defendant's burden to establish that the conviction may not be so relied upon. *See Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, No. CIV.98 3096, 2007 WL 1876392, at *10 (D.D.C. June 28, 2007) ("Indeed, 'principles of comity suggest that [a foreign] judgment should be given weight as *prima facie* evidence of the facts underlying it,' and the challenging party has the burden of impeaching the reliability of such judgment.") (quoting *Donnelly*, 411 F.3d at 270-71).

Defendant does not and cannot carry the burden to show his conviction should be ignored. Mere invocation of differences in legal proceedings – which is essentially all Defendant offers – is not nearly enough. *Hilton v. Guyot*, 159 U.S. 113, 204-05 (1895) ("But it having been shown by the plaintiffs, and hardly denied by the defendants, that the practice followed and the method of examining witnesses were according to the laws of France, we are not prepared to hold that the fact that the procedure in these respects differed from that of our own courts is, of itself, a sufficient ground for impeaching the foreign judgment."); *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 994 (10th Cir. 2005) (the procedures the English courts afford need not be identical to ours, they must only be compatible in that they do not offend the notion of basic fairness); *Allianz Suisse Versicherungs-Gesellschaft v. Miller*, 24 F. Supp. 3d 670, 677-78 (W.D. Mich. 2014) ("[A] mere difference in the procedural system is not a sufficient basis for nonrecognition.") (citation omitted); *Hurst*, 474 F. Supp. 2d at 35-36 ("The ultimate inquiry, however, is not whether this court or any other court would have reached the

---

[5] Movants are not asking the court to apply offensive collateral estoppel in a civil case, as was the context in *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19 (D.D.C. 2007), the case cited by Defendant regarding the conviction. Rather, Movants have offered the conviction as compelling *prima facie* contemporaneous evidence that they are victims of Defendant.

5

same conclusion as the trial court here, but rather, whether the process was adequate for purposes of recognition and preclusion by a U.S. court – that is, whether [the defendant] was provided with a fair and impartial trial with an opportunity to litigate the issue of his guilt, and whether this court is satisfied that these foreign proceedings were sufficiently free from prejudice to warrant their preclusive effect here"). In short, "[m]ere allegations of differences in the originating legal system are insufficient to demonstrate the partiality required to deny recognition to a judgment." Federal Judicial Center International Litigation Guide: *Recognition and Enforcement of Foreign Judgments*, 74 U. PITT. L. REV. 491, 510 (Spring 2013).

Indeed, the conviction itself makes clear that the Colombian court carefully considered and rejected similar challenges to the reliability of the witness statements by Defendant's counsel in those proceedings. *See* Conviction at 8, 13-14. The Colombian court finds the Defendant responsible for the disappearance of Mr. Henríquez "without a shadow of a doubt" after "applying its own sound critical judgment and comparing the body of evidence collected in the record . . . ." *Id*. at 14. Defendant did not appeal such finding (and/or the conviction itself), and does not claim that he could not have done so. That alone undermines his challenge to the conviction now, seven years after the fact.[6]

Finally, recognizing Movants as victims does not otherwise create due process issues. For example, as Movants have previously pointed out (and Defendant's brief does not address), the Court is not limited by the Federal Rules of Evidence in resolving this issue. Fed. R. Evid. 1101(d) (Rules of Evidence not applicable to miscellaneous proceedings). The Court can (and

---

[6] In addition, none of the cases cited by Defendant support the proposition that the witness statements should be ignored, let alone the conviction. For example, in *Small v. United States*, 544 U.S. 385 (2005), the prior felony conviction in Japan was precluded as a *predicate offense* for possession of a firearm by a previously convicted felon. The Supreme Court found that the statute at issue was intended to apply to domestic convictions only. *Id.* Similarly, in *United States v. Concha*, 233 F.3d 1249 (10th Cir. 2000) it was determined that foreign gun convictions would not count as *predicate* offenses for sentencing enhancement purposes. These cases only illustrate the lack of support for Defendant's argument – this is not a gun possession case turning on the meaning of whether "any conviction" applies to foreign convictions for predicate offense purposes.

should) consider *all* of the evidence attached to and referenced in the prior briefing of the Movants, the authenticity of which is not in dispute, as well as the Government's assertions related to Defendant's use of violence in furtherance of the conspiracy.  No Confrontation Clause limitations on hearsay apply to this proceeding, which is not a trial.  *See, e.g.*, *United States v. Bras*, 483 F.3d 103, 108-09 (D.C. Cir. 2007) (allowing hearsay at sentencing); *Crawford v. Jackson*, 323 F.3d 123, 131 (D.C. Cir. 2003) (allowing hearsay at revocation hearing); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (allowing hearsay at detention hearing).

In sum, given the Colombia conviction and supporting evidence and pleadings establishing the indisputable linkage of the kidnapping and murder of Mr. Henríquez to the Defendant's acknowledged role in the conspiracy, Defendant's assertion that Movants must now adduce additional evidence of "motive" must fail, and Defendant's due process arguments ring hollow.

## CONCLUSION

Movants respectfully submit that the evidence they have marshalled is conclusive, and that fairness and justice require that they be declared victims under the CVRA now, without further proceedings.  Doing so is consistent with the due process rights of the Movants and the Defendant.

Dated:  February 12, 2016

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

 /s/ Melissa Mannino
MELISSA MANNINO
D.C. Bar No. 446154
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1700 K Street, NW
Fifth Floor
Washington, DC 20006-3817
Telephone:  (202) 973-8800
Facsimile:   (202) 973-8899
mmannino@wsgr.com

*Counsel for Movants Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín and Bela Henríquez Chacín*