IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GIRALDO-SERNA, <br><br> Defendant, <br><br> Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, and Bela Henríquez Chacín, <br><br> Victims. | CASE NO.: 1:04-cr-00114-1 RBW |

## VICTIMS' SENTENCING STATUS STATEMENT

### I.   INTRODUCTION

Hernan Giraldo-Serna is to be sentenced on December 16, 2016 at 9:00 am.  The family members of the victim in this case whose rights under the Crime Victims' Rights Act, 18 U.S.C. §3771 ("CVRA") were recognized on March 14, 2016 (Dkt. #541), Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín and Bela Henríquez Chacín (the "Victims"), will be traveling from South America to attend and be heard at the sentencing.  As the Court directed, the prosecutor sought – and obtained – from the Department of Homeland Security a special benefit parole allowing Bela Henríquez Chacín into the United States for the sentencing.  That parole expires late this month if it cannot be used.

### II.   PRIOR VICTIM-RELATED SENTENCING DEVELOPMENTS

On October 2, 2015, before their rights under the CVRA were recognized, the Victims filed "Movant's Sentencing Submission" (Dkt. #521) supported by a declaration with eleven exhibits, (Dkt. #521-1), and a statement by the Victims (Dkt. #521-4).  That submission explained, among other things, that no downward departure should be granted to the defendant given his role at the apex of a vast cocaine conspiracy, and, to the contrary, his serious criminal

history (two separate convictions reflecting multiple murders) in Colombia and his further admitted, but unconvicted, heinous criminal conduct (including torture and pedophilia), should not only foreclose a downward departure but also warrant an upward departure.

Following the Court's March 14, 2016 Order (Dkt. #541) recognizing the Victims' rights, on May 2, 2016, the Court's Probation Minute Order directed that there be unspecified victim-related revisions to the Pre-Sentence Report ("PSR"). Victims are unaware of the contents of, or revisions to, the PSR. However, the PSR should have recognized, *inter alia*, that (1) the Court's findings in support of the conclusion that Victims have CVRA rights necessitated the inclusion of Mr. Henriquez's murder as relevant conduct;[1] (2) consequently the murder cross-reference from Guideline 2D1.1(d)(1) should apply;[2] (3) there are Victims in this

---

[1] In order to conclude that the Victims have rights under the CVRA, the Court found that the killing of Mr. Henríquez was caused by the conspiracy for which the Defendant is to be sentenced. That finding means that the killing is "relevant conduct" which includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction . . . ." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A) (Nov. 2015).

Conduct need not be explicitly alleged or admitted in order to constitute relevant conduct. *United States v. Long*, 185 F. Supp. 2d 30, 43 (D.D.C. 2001) ("The Court nevertheless may consider uncharged conduct as relevant conduct under the Guidelines"); *United States v. Boney*, 977 F.2d 624, 636 (D.C. Cir. 1992) (conduct underlying an acquitted charge may be used in sentencing if found by a preponderance of the evidence); *see also United States v. Gamez*, 301 F.3d 1138, 1145 (9th Cir. 2002) (even a murder of which defendant was acquitted constituted relevant conduct in sentencing for a drug conspiracy). Moreover, "[i]n a conspiracy prosecution, uncharged acts 'committed in furtherance of the charged conspiracy are themselves part of the act charged.'" *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006) (quoting *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999)) (allowing proof of an uncharged murder in drug conspiracy prosecution); *United States v. Garcia Abrego*, 141 F.3d 142, 174-75 (5th Cir. 1998) (allowing proof of uncharged murders in drug conspiracy prosecution).

[2] That Guideline states that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline."). *See United States v. Bostick*, 791 F.3d 127, 158 (D.C. Cir. 2015) (applying Guideline § 2D1.1(d)(1) where the record supported inference that a violent campaign, including multiple murders, was undertaken in furtherance of the drug conspiracy); *United States v. Craig*, 808 F.3d 1249, 1258 (10th Cir. 2015) (applying Guideline § 2D1.1(d)(1) and holding that a murder which occurred during a robbery of a rival drug dealer was in furtherance of the charged drug conspiracy). That the killing was murder in the first degree, *i.e.*, a "willful, deliberate, malicious, and premeditated killing," 18 U.S.C. § 1111(a), is incontrovertible and is apparent from the evidence on which the Court relied in recognizing the Victims' rights under the CVRA. The Colombian conviction on which the Court relied, in part, concluded that Mr. Henríquez

(continued...)

case and they are asserting a position regarding the sentence; and (4) this Defendant was, therefore, very differently situated from other extradited Colombian drug lords whom the Court may have sentenced because the others were sentenced for *victimless* drug offenses and with no finding that their conduct was the direct and proximate cause of a murder.

Between September 8, 2016 and December 7, 2016, the Victims submitted to the Probation Office statements concerning the impact of Defendant Giraldo-Serna's murder of their father and husband.

The Victims will be present at the sentencing hearing to be heard.

### III.   SEALING

There is substantial public interest in this case as reflected by the front-page story that ran in the Sunday edition of the *New York Times* on September 11, 2016, available at http://www.nytimes.com/2016/09/11/world/americas/colombia-cocaine-human-rights.html (also attached hereto as Exhibit A for the Court's convenience).  If any sentencing-related materials (excluding the PSR) have been filed under seal, they should be unsealed in advance of the sentencing hearing.  *See* Dkt. #458 at 6-9 (addressing process and balancing required to justify sealing in a criminal case) *see also* Application of the Reporters Committee for the Freedom of the Press, CBS Broadcasting Inc., Sergio Gomez, Daniel Pacheco, and Univision to Unseal Court Records in Criminal Matters Nos. 1:04-CR-114-RWB-1 and 1:04-CV-114-RBW-9, *In re The Reporters Committee for Freedom of the Press*, No. 1:15-mc-00411-RBW (D.D.C. April 3, 2015), ECF No. 1 and Memorandum of Points and Authorities in Support of the Application of the Reporters Committee for the Freedom of the Press, CBS Broadcasting Inc., Sergio Gomez, Daniel Pacheco, and Univision to Unseal Court Records in Criminal Matters

---

> had to be disappeared at all costs since he was impeding the objectives of the AUC to continue planting coca, which Henríquez wished to see eradicated in order to cultivate cacao.  This was not permitted by Hernan Giraldo who, in revenge and with malice decided, together with his right-hand man . . . , to make Henríquez Santamaría disappear.

Addendum to Response of the United States to Order to Show Cause in Connection with Motion to Enforce Rights Under the Crime Victims' Rights Act, *United States v. Giraldo-Serna*, No. 1:04-cr-00114-1 RBW, ECF No. 200-1 (D.D.C. June 18, 2010) Exhibit 7 at 14.

Nos. 1:04-CR-114-RWB-1 and 1:04-CV-114-RBW-9, *In re The Reporters Committee for Freedom of the Press*, No. 1:15-mc-00411-RBW (D.D.C. April 3, 2015), ECF No. 1-2.

### IV.     HEARING LOGISTICS

The Victims will need the assistance of a Spanish language interpreter in addressing the Court and understanding the proceedings. Inasmuch as they speak the same language as the Defendant, it seems likely a single interpreter can be used, provided there are adequate headsets and the Victims are not required to be in close proximity to the Defendant to share an interpreter.

### V.     CONCLUSION

The Victims were unfairly excluded from a plea process by which the prosecution inexplicably allowed the Defendant to attempt to cooperate – notwithstanding his murderous criminal history and notwithstanding the virtual impossibility of the Defendant being capable of leading to a prosecution of someone worse than him. There has been no showing whatsoever to the Victims (or the public) that the Defendant has qualified for a downward departure – this Defendant has testified against no one, and no higher ranking drug kingpins (if there are any) appear to have been prosecuted based on assistance from this Defendant. This sentencing therefore creates the likelihood that a convicted murderer being sentenced for an enormous cocaine conspiracy to which yet another murder was integral is nonetheless going to receive a recommendation of leniency from the prosecution to a sentence less than street-level drug dealers routinely receive. Fortunately, the plea agreement expressly leaves the actual sentence up to the Court, who can assure that real justice is done here.

///

///

///

///

///

///

Dated:  December 8, 2016                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                            By:   /s/ Melissa Mannino
                                            MELISSA MANNINO
                                            D.C. Bar No. 446154
                                            WILSON SONSINI GOODRICH & ROSATI
                                            PROFESSIONAL CORPORATION
                                            1700 K Street, NW
                                            Fifth Floor
                                            Washington, DC 20006-3817
                                            Telephone:  (202) 973-8800
                                            Facsimile:   (202) 973-8899
                                            mmannino@wsgr.com

                                            *Counsel for Victims Zulma Natazha Chacín de Henríquez, Nadiezhda Natazha Henríquez Chacín, and Bela Henríquez Chacín*